1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**AT TACOMA**

| | |
|---|---|
| TODD WODJA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE EMPLOYEES CREDIT UNION, and DOES 1-10,<br><br>Defendants. | **No.:**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) Breach of Contract;**<br>**(2) Violation of the Washington Consumer Protection Act RCW 19.86.010 *et seq*;**<br>**(3) Unjust Enrichment/Restitution;**<br>**(4) Money Had And Received;**<br>**(5) Negligence;**<br>**(6) Electronic Funds Transfer Act.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Todd Wodja ("Plaintiff"), by his attorneys, hereby brings this class and representative action through this action against Washington State Employees Credit Union ("WSECU" or "Defendant") and DOES 1-10. All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or his counsel, which are based on personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys. Each allegation either has

**CLASS ACTION COMPLAINT - 1**
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

CLASS ACTION COMPLAINT - 2
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1. This is a class and representative action brought by Plaintiff to assert claims in his own right and in his capacity as the class representative of all others similarly situated.  This class action seeks monetary damages, restitution, punitive damages, and injunctive relief against Defendant WSECU arising from WSECU's breach of its contract with consumers in its implementation of an overdraft fee program for ATM and debit card transactions.  Specifically, Plaintiff asserts that WSECU charged overdraft fees for transactions for which there were money in the checking account to cover the transactions, thereby breaching the express terms of its opt-in agreement with customers.  Plaintiff also alleges that by WSECU providing inaccurate and misleading overdraft information to its customers, under the Electronic Funds Transfer Act, 12 C.F.R. § 1005, it was not authorized to assess overdraft fees to consumers for debit card and non-recurring debit card charges.  However, WSECU did charge its customers overdraft fees for ATM and debit card charges.

## PARTIES

2. Plaintiff is a resident of Tacoma, Washington, and was a member of WSECU at all relevant times to the class action allegations.

3. Based on belief, Defendant WSECU is a state chartered credit union headquartered in Olympia, Washington.

4. Whenever in the complaint reference is made to any act, deed, or conduct of a defendant corporation, the allegation means the defendant corporation engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the defendant corporation's ordinary business and affairs. (Doe Defendants are collectively referred to herein and are included in the term "Defendant.")

5. As to the conduct alleged herein each act was authorized ratified or directed by Defendant's officers, directors, or managing agents.

CLASS ACTION COMPLAINT - 2
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

## VENUE AND JURISDUCTION

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Jurisdiction is also proper pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d) because 1) the claims of plaintiffs aggregated together exceed $5,000,000 and 2) some putative class members are residents of different states than the Defendant. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is headquartered in Thurston County, Washington.

## FACTUAL ALLEGATIONS

**A. WSECU's Unlawful Overdraft Program**

7. WSECU is a Washington State-based credit union with approximately $2.2 billion in assets that provides banking services to over 105,656 members through 19 branches in Washington State. One of the services offered by WSECU to consumer banking customers is a checking account. One of the benefits WSECU offers with a checking account is a debit card that can be used for a variety of transactions including buying goods and services, as well as the ability to write checks, withdraw from ATM machines, schedule ACH (Automated Clearing House transactions) such as certain recurring payments, and other type of transaction items that debit from the checking account. In connection with processing debit items (including debit card, ATM, check, ACH and other types of transactions), WSECU assesses overdraft fees to its customers when it determines that there are insufficient funds in the account.

8. Credit Unions, like banks, have increasingly turned to overdraft fees as a highly lucrative profit center. According to the June 11, 2013 report entitled CFPB Study of Overdraft Programs[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14). That reflects an increase of 15% in overdraft fees from 2007 to 2012. (*Id.*. at p. 16). Overdraft and NSF fees now generate over 50% of all fees, and constitute 11.6% of net income for credit unions. (*Id.*. at p. 15.)

9. The high cost of an overdraft fee is usually unfairly punitive. In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrafted their account by mistake. (May 2012 Pew Charitable Trust report entitled "Overdraft America: Confusion and Concerns

---

[1] http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf

**CLASS ACTION COMPLAINT - 3**
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

about Bank Practices", at p. 4.)   More than 60% of the transactions that resulted in a large overdraft fee were for less than $50.  (June 2014 Pew Charitable Trust report entitled "Overdrawn", at p.8).  More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (*id*., at p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee (*id*., at p. 10).

10.    Unfortunately, the customers who are assessed these fees are the most vulnerable customers.  Younger, lower-income, and nonwhite account holders are among those who were more likely to be assessed overdraft fees.  (*Id*., at p. 1.)  A 25 year old is 133% more likely to pay an overdraft penalty fee than a 65 year old.  (*Id*., at p. 3.)  More than 50% of the customers assessed overdraft fees earned under $40,000 per year.  (*Id*., at p. 4.)  Nonwhites are 83% more likely to pay an overdraft fee than whites.  (*Id*., at p. 3.)

11.    In reaction to banks and credit unions taking advantage of millions of customers through the unfair practice of charging overdraft fees through methodologies that maximize the possible number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues have occurred over the past few years.  The results of this litigation include a trial verdict in California and nationwide settlements wherein banks and credit unions have been ordered or have agreed to pay unfairly assessed overdraft fees back to their customers in an amount in the hundreds of millions of dollars.

12.    Furthermore, the federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies.  In 2010, the Federal Reserve Board enacted regulation that financial institutions were only permitted to charge overdraft fees on ATM and one-time debit card charges if they obtained the affirmative consent of the customer. 12 C.F.R. § 1005.17 ("Opt In Rule").

13.    To qualify as affirmative consent, the opt-in notice/agreement must include, but is not limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;

**CLASS ACTION COMPLAINT - 4**
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

- The opt-in consent must be obtained separately from other consents and acknowledgements;
- The consent cannot serve any purpose other than opting into the overdraft program;
- The consent cannot be a pre-selected checked box;
- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution did not obtain proper affirmative consent from the consumer that meets all of the requirements of the Opt-in Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

14. For all times relevant to this complaint, WSECU has had an overdraft program (sometimes referred to as "Overdraft Privilege") in place for assessing overdraft fees on ATM and Debit Card transactions which is contrary to the express terms of its contracts with members; is contrary to how WSECU represents its overdraft program to its members; and is contrary to what consumers would expect as to when they would be assessed overdraft fees. In the opt-in contract with its members under the section entitled "Overdraft Services Disclosure" and "WHAT YOU NEED TO KNOW ABOUT OVERDRAFTS AND OVERDRAFT FEES", WSECU states *"An overdraft occurs when you do not have enough money in your account to cover a transaction."* (Emphasis added), Overdraft Services Disclosure contract ("Opt-In Agreement") attached hereto as Exhibit 1.

15. WSECU's contractual promise in the Opt-In Agreement to only assess overdraft fees when there is not enough money in the account to pay the item, was also provided to customers in other disclosures and marketing materials it provided to customers.

16. However, contrary to the Opt-In Agreement, and other marketing materials that WSECU will only charge overdraft fees when there is not enough money in the checking account to cover the transaction, WSECU's practice when assessing an overdraft fee on a transaction is to ignore whether there is money in the account, and instead make the automated decision on assessing overdraft fees based on an artificial internal calculation (available balance) rather than

CLASS ACTION COMPLAINT - 5
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

the actual balance.  The available balance is the actual balance minus anticipated debits and credits in the future (that may or may not occur).  The use of an internal available balance rather than the actual balance to determine whether a transaction is overdrawn and subject to an overdraft fee is directly contrary to the language in the contract.  The result is that WSECU improperly charges members overdraft fees in situations when there is sufficient money in the account to pay the items.

17.     This practice is in breach of WSECU's Opt-In Agreement.  Further, the practice of charging overdraft fees even when there are sufficient money/funds to cover the transaction, is inconsistent with how WSECU describes the circumstances of when it assesses overdraft fees in other customer materials.  Further, WSECU has failed to adequately and properly inform customers of the conditions under which overdraft fees will be assessed in both the Account Agreement and other consumer materials.

**B.     Unlawful Overdraft Fees Assessed to Plaintiff Todd Wodja**

18.     Plaintiff was harmed by the practice of charging overdraft fees when there were was money in the account to cover the transaction.  Plaintiff entered into agreement with WSECU, where WSECU would only charge overdraft fees on ATM and Debit Card transactions if there was not sufficient funds or money to pay the transaction.  WSECU breached this agreement by charging Plaintiff overdraft fees on transactions when there was sufficient funds/money to pay the transaction, and in so breaching the Opt-In Agreement, violated Regulation E.  It will be necessary to obtain Defendant's records to determine each occasion when WSECU engaged in this practice, and the resulting damage to Plaintiff from the practice.  However, to give just one example on June 18, 2015, Plaintiff had a beginning balance of $395.  Plaintiff then withdrew $300 from an ATM, leaving a balance of $95.  Plaintiff was then charged a $27 overdraft fee (called an Overdraft Privilege Fee) on the ATM transaction.  Plaintiff was charged the overdraft fee despite having sufficient funds/money ($95) in his account to cover the transaction.  It is believed a complete review of Plaintiff's records will show multiple instances of Plaintiff being improperly charged overdraft fees for transactions despite having sufficient money in his account to cover the transaction.

CLASS ACTION COMPLAINT - 6
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

19. Furthermore, the assessment and unilateral taking of improper overdraft fees, further reduces the balance and amount of funds in the account, resulting in aggressively causing subsequent, otherwise non-overdraft transactions into transactions for which further overdraft fees are assessed. A complete evaluation of WSECU's records is necessary to determine the full extent of Plaintiff's harm from this practice.

20. Therefore, Plaintiff on behalf of himself and all others similarly situated, seeks relief as set forth below.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this case, and each of his respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23.

22. The "Class" is composed of two potential classes.

**The Positive Balance Class:**

> **All United States residents who have or have had accounts with WSECU who incurred overdraft fees for ATM and non-recurring debit card transactions when there were was money in the checking account to pay the transactions in the six years preceding the filing of this Complaint.**

**The Regulation E Class:**

> **All United States residents who have or have had accounts with WSECU who were opted into the overdraft program for ATM and non-recurring debit card transactions through the use of an opt-in agreement which provided inaccurate or misleading information on WSECU's overdraft program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transaction in the year preceding the filing of this Complaint.**

23. Excluded from the above Class is any entity in which Defendant has a controlling interest, and officers or director of Defendant, this Court and any employees assigned to work on the case, and all employees of the law firms representing Plaintiff and the Class.

24. The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of the members of the Class is unknown to Plaintiff at this time and can be determined only by appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

25. Membership in the Class is ascertainable. Upon information and belief, Defendant

CLASS ACTION COMPLAINT - 7
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

retains the databases, or other documentation, of transactions and account enrollment which will be analyzed by an expert to ascertain all members of the Class who have been harmed by the practice. Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

26. The action involves common questions of law and fact. Those common questions of law or fact predominate over questions that may affect only individual Class members. The questions of law and fact common to Plaintiff and the Class members include, among others, the following:

   a. Whether Defendant had a standardized Opt-In Agreement during the class period that were provided to customers;

   b. Whether Defendant breached this customer agreement by use of an automated system of assessing overdraft fees for ATM and debit card transactions when customers' checking accounts had sufficient funds/money to cover the transactions;

   c. Whether Defendant's conduct violated state consumer protection laws;

   d. Whether Defendant's conduct violated 12 C.F.R. § 1005.17.

27. Plaintiff's claims are typical of all of the members of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members.

28. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection. Plaintiff and his counsel intend to prosecute this action vigorously.

29. The class action is superior to all other available methods for the fair and efficient adjudication of this case or controversy. Because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it virtually

CLASS ACTION COMPLAINT - 8
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

impossible for Plaintiff and Class members individually to seek redress for the alleged wrongful conduct. Even if any individual persons or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation(s) would proceed. The class action device is preferable to individual litigation(s) because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

## FIRST CAUSE OF ACTION

### (For Breach of Contract)

30. The preceding allegation are incorporated by reference and realleged as if fully set forth herein.

31. Plaintiff and each of the Class members entered into an Opt-in Agreement which was drafted by and is binding on Defendant.

32. The contract authorize Defendant to assess overdraft fees only for ATM and non-recurring debit card transactions for which there was not enough money in the account to pay the item.

33. In addition, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually

CLASS ACTION COMPLAINT - 9
No.:
FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

34. The material terms of the contract also included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

35. Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

36. Defendant breached the expressed terms of the contracts by, inter alia, assessing overdraft fees on ATM and non-recurring debit card transactions when there was enough money in the account to pay the item.

37. Alternatively, Defendant breached the implied covenant of good faith and fair dealing based on this practice.

38. As a proximate result of Defendant's breach of the contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## SECOND CAUSE OF ACTION

**(For Violation of Washington Consumer Protection Act RCW 19.86.010 *et seq*)**

39. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

40. Defendant is a "person" within the meaning of the Washington Consumer Protection Act, RCW § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of the Washington Consumer Protection Act, RCW § 19.86.010(2).

41. Plaintiff and members of the Class are "persons" within the meaning of the

CLASS ACTION COMPLAINT - 10
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

1  Washington Consumer Protection Act, RCW § 19.86.010(1).

2      42.    The conduct of WSECU, in its acts and omissions, as set forth herein in this Complaint relating to overdraft policies and practice violate the Washington Consumer Protection Act because they (1) constitute unfair and/or deceptive acts or practices; (2) are committed in the course of Defendants' business; (3) have a pervasive public interest impact and have the potential to deceive a substantial portion of the public; and (4) have caused injury to Plaintiff in his property and to the members of the Class.

    43.    The conduct of WSECU as alleged herein is the proximate cause of injury to Plaintiff and the Class in an amount to be proven at trial.

    44.    Defendant's general course of conduct has an impact on the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

    45.    WSECU is liable to Plaintiff and the Class members for damages in an amount to be proven at trial, including attorney fees, costs and statutory and treble damages, pursuant to Wash. Rev. Code § 19.86.090, and should be enjoined from continuing to engage in these unlawful, deceptive, unreasonable and unlawful practices as alleged herein.  Plaintiff and the Class seek relief as set forth in the Prayer below.

## THIRD CAUSE OF ACTION

### (For Unjust Enrichment/Restitution)

    46.    The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

    47.    Defendant received millions of dollars as a result of the wrongful and unjust misconduct alleged above.

As a result, Plaintiff and the Class members have conferred a benefit on Defendant.  Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred.  Defendant will be unjustly enriched should it be allowed to retain such funds.  Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

//

CLASS ACTION COMPLAINT - 11
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

## FOURTH CAUSE OF ACTION

### (For Money Had and Received)

48. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

49. Defendant has obtained money from Plaintiff and the Class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

50. As a result, Defendant has in its possession money which in equity belongs to Plaintiff and the Class members which should be refunded to Plaintiff and the Class members. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

## FIFTH CAUSE OF ACTION

### (Negligence)

51. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

52. As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. Defendant had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment though its own wrongful acts. Specifically, Defendant owed a duty of care to Plaintiff and the Class members to not charge overdraft fees for transactions for which there were money in the account to pay the transaction.

53. Defendant breached this duty by unreasonably mishandling the accounts of Plaintiff and the Class members by taking funds from Plaintiff and the Class members by assessing overdraft fees for transactions when fees should not have been charged.

54. As a proximate result of Defendant's negligence, Plaintiff and each class member has been damaged in an amount to be proven at trial, and seek relief as set forth in the Prayer below.

//

**CLASS ACTION COMPLAINT - 12**
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

## SIXTH CAUSE OF ACTION

### (Violation of Electronic Funds Transfer Act)

55. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

56. Because of Defendant's misrepresentations and material omissions as to the operation of the overdraft program, any consent that Defendant obtained for class members participation in the program was fraudulently induced.

57. Because consent to participation was fraudulently induced, Defendant failed to comply with 12 C.F.R. § 1005.17 which requires affirmative consent.

58. Defendant's practice is also unlawful since it violates 12 C.F.R. § 707.4(b)(4), for failure to comply with the disclosed conditions under which an overdraft fee may be assessed – namely, that Defendant engages in a practice of assessing overdraft fees for transactions for which there is money in the account to cover the transactions. Defendant's practice further violates 12 C.F.R. § 740.2 by making inaccurate and deceptive representations.

59. Because of Defendants' failure to comply with 12 C.F.R. § 1005.7, 12 C.F.R. § 707.4(b)(4), and 12 C.F.R. § 740.2 they are liable for actual and statutory damages, as well as attorney fees and costs of suit pursuant to 12 U.S.C. § 1693m. Plaintiff and the Class members seek relief as set forth in the Prayer below.

### PRAYER

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1. For an order certifying this action as a class action;

2. For compensatory and statutory damages on all applicable claims and in an amount to be proven at trial;

3. For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4. For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there was money in the account to cover the transaction, and providing accurate and reliable information regarding the overdraft practice;

**CLASS ACTION COMPLAINT - 13**
No.:

FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

1      5.    For costs;

2      6.    For interest;

3      7.    For attorneys' fees under the Washington Consumer Protection Act, the common fund doctrine, other applicable law, and the customer account agreement; and

     8.    For such other relief as the Court deems just and proper.

DATED this 25th day of September, 2015

                                          FRIEDMAN | RUBIN

                             By:  */s/Richard H. Friedman, WSBA #30626*
                                   Richard H. Friedman, WSBA #30626
                                   rfriedman@friedmanrubin.com
                                   Richard Dykstra, WSBA #5114
                                   rdykstra@friedmanrubin.com
                                   **FRIEDMAN | RUBIN**
                                   51 University Street, Suite 201
                                   Seattle, WA 98101-3641
                                   Telephone: (206) 501 4446
                                   Facsimile: (206) 623-0794

                                   Richard D. McCune, CA State Bar #132124
                                   rdm@mccunewright.com
                                   Jae (Eddie) K. Kim, CA State Bar #236805
                                   jkk@mccunewright.com
                                        *(Pro Hac Vice Pending)*
                                   **MCCUNEWRIGHT LLP**
                                   2068 Orange Tree Lane, Suite 216
                                   Redlands, California  92374
                                   Telephone: (909) 557-1250
                                   Facsimile: (909) 557-1275

                                   Taras Kick, CA State Bar #143379
                                   taras@kicklawfirm.com
                                   Thomas A. Segal, CA State Bar #222791
                                   thomas@kicklawfirm.com
                                        *(Pro Hac Vice Pending)*
                                   **THE KICK LAW FIRM, APC**
                                   201 Wilshire Boulevard
                                   Santa Monica, California 90401
                                   Telephone:   (310) 395-2988
                                   Facsimile:     (310) 395-2088

                                   *Attorneys for Plaintiff  Todd Wodja*
                                   *and the Putative Class*

**CLASS ACTION COMPLAINT - 14**
No.:
FRIEDMAN | RUBIN
51 University St., Suite 201
Seattle, WA 98101-3641
P. (206) 501-4446 / F. (206) 623-0794

# EXHIBIT "1"

# WSECU

## DISCRETIONARY OVERDRAFT PRIVILEGE POLICY

WSECU provides a discretionary Overdraft Privilege service to members maintaining checking accounts, in accordance with the following policy. These services are in addition to our standard overdraft protection options such as your savings account, credit card or other line of credit account.

### ELIGIBILITY

In our effort to provide excellent service, we will, as a discretionary service and not as a right or obligation guaranteed to you, approve your reasonable overdrafts when your account is in good standing based on your account activity.

Good standing will include, but are not limited to the following:
- How long your account has been open with us.
- The number and amount of deposits to your account received over the last 30 days.
- You are not in default on any loan or other obligation to us.

WSECU may impose additional eligibility requirements at any time, and may terminate the service at its sole discretion even if you continue to satisfy the eligibility requirements. WSECU RESERVES THE RIGHT TO REVOKE THE DISCRETIONARY OVERDRAFT PRIVILEGE FOR YOUR ACCOUNT AT ANY TIME. The credit union will notify you at the time of termination if it revokes the service on your account.

### HOW THE SERVICE WORKS

Each time you access your Overdraft Privilege limit, you will receive a notice indicating the access. It covers outstanding checks, in-person withdrawals, return deposit items and electronic transactions up to your established limit, although special arrangements or circumstances may change this limit. You may elect to also cover ATM and everyday debit card transactions. To do so, you must affirmatively opt in to the payment of these services. Your account will be assessed the credit union's usual non-sufficient funds fee for each item paid. Fees charged for covering overdrafts, as well as the amount of the overdraft item, will be subtracted from your available overdraft privilege limit. When we notify you that you have accessed your Overdraft Privilege limit, it is done with the expectation that you will make a deposit immediately to clear the overdraft. Any discretionary payment of any NSF item(s) does not obligate us to pay any additional NSF item(s) or to provide prior written notice of our decision to refuse to pay any additional NSF item(s).

Checks are cleared against your account from smallest dollar amount to largest dollar amount each business day. Electronic transactions clearing through the Automated Clearinghouse are processed on the effective date of the file received from the Federal Reserve. Each file is processed posting credit (deposit) transactions first and then debit (withdrawal) transactions. WSECU may receive and process multiple files on each business day. ATM and one-time or re-occurring debit transactions are posted in the order in which we receive them. The order in which transactions are received and processed can affect the total amount of overdraft fees that you incur. There is no limit on the total fees WSECU can charge for overdrawing your account up to your established Overdraft Privilege limit. All other fees and charges (as set forth in the Rate and Fee Schedule) will apply to your account. Each member and joint owner will be liable for payment of any overdraft, irrespective of who created the overdraft.

WSECU's Membership and Account Agreements, as amended from time to time, governs your accounts and member relationship with the credit union. To the extent there is inconsistency between this policy and the terms of the Membership and Account Agreement, the Membership and Account Agreement will control. A copy of the current Membership and Account Agreement for consumer and/or business accounts is available to you upon request. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected on your credit report.

At this time, account types not eligible for the discretionary Overdraft Privilege service include Representative Payee, Organizational, Trust, Estate and Minor accounts.

You may choose to make changes to the payment of overdrafts under the Overdraft Privilege service at any time. Please note there are other ways to manage your account with respect to insufficient funds. If you have questions regarding the discretionary Overdraft Privilege service and your options for payment of overdrafts using this service or other overdraft options or wish to exercise your opt in or opt out rights, call our Contact Center at 800.562.0999, weekdays from 7:00 am-7:00 pm and Saturdays from 9:00 am-2:00 pm.

OVERDRAFT SERVICES DISCLOSURE

## WHAT YOU NEED TO KNOW ABOUT OVERDRAFTS AND OVERDRAFT FEES

An overdraft occurs when you do not have enough money in your account to cover a transaction. At WSECU's discretion, the overdraft may be paid. There are several different ways that overdrafts are paid:

1. WSECU has a standard discretionary Overdraft Privilege service that is included as a benefit on your checking account if you meet specific criteria as outlined on the back of this form.
2. Overdraft protection from your savings account is automatically established when you open a checking account.
3. WSECU offers additional overdraft protection options such as a transfe r from one of your WSECU accounts, a personal line of credit or your WSECU Visa® credit card. These may be less expensive than Overdraft Privilege. To learn more, ask about these options.

### WHAT IS DISCRETIONARY OVERDRAFT PRIVILEGE?

With Overdraft Privilege, WSECU currently authorizes and pays overdrafts for the following types of transactions:

- Checks and other transactions made against your checking account
- Recurring automatic bill payments authorized against your debit card

WSECU will not authorize and pay overdrafts for the following types of transactions unless you notify us that you wish to opt in to the payment of these items:

- ATM transactions
- Everyday debit card transactions

WSECU pays overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction. If we do not authorize and pay an overdraft, your transaction will be declined.

### WHAT FEES WILL I BE CHARGED IF WSECU PAYS MY OVERDRAFT WITH OVERDRAFT PRIVILEGE?

- We will charge you a fee of $27 each time we pay an overdraft.
- There is no limit on the total fees we can charge you for overdrawing your account up to your established Overdraft Privilege limit.

### WHAT DO I NEED TO DO TO HAVE WSECU AUTHORIZE AND PAY OVERDRAFTS ON MY ATM AND EVERYDAY DEBIT CARD TRANSACTIONS?

If you want us to authorize and pay overdrafts on ATM and everyday debit card transactions, you must opt in.
You can opt in by:

- Completing the information below and returning it to WSECU
- Online banking at wsecu.org
- Calling 800.562.0999

---

☐ I do not want WSECU to authorize and pay overdrafts on my ATM and everyday debit card transactions.
☐ I want WSECU to authorize and pay overdrafts on my ATM and everyday debit card transactions.

Printed Name:_____

Daytime Phone Number:_____

Last Four Digits of Account Number:_____

POD-700 12.14