UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TODD WODJA, individually and on behalf of all other individually situated,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE EMPLOYEES CREDIT UNION, and DOES 1-10,<br><br>Defendants. | CASE NO. C15-5693 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant Washington State Employees Credit Union's ("WSECU") motion to dismiss (Dkt. 32). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part and denies it in part for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On September 25, 2015, Plaintiff Todd Wodja ("Wodja") filed a class action complaint against WSECU asserting claims for breach of contract, violation of the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86, unjust

ORDER - 1

enrichment/restitution, money had and received, negligence, and Electronic Funds Transfer Act, 15 U.S.C. 1693 *et seq.* Dkt. 1.

On March 10, 2016, Wodja filed a second amended complaint ("SAC") asserting claims for breach of contract, unjust enrichment/restitution, and money had and received. Dkt. 31.

On March 25, 2016, WSECU filed a motion to dismiss. Dkt. 32. On April 18, 2016, Wodja responded. Dkt. 34. On April 29, 2016, WSECU replied. Dkt. 35.

## II. FACTUAL BACKGROUND

Although neither party addresses this fact, Wodja opened an account at WSECU. The account came with a debit card and access to automatic teller machines ("ATMs"). WSECU contends, and Wodja does not dispute, that the parties entered into a membership and account agreement. *See* Dkt. 32, Ex. 1 ("MAA"). In addition, WSECU sent Wodja a separate, two-page document conveying information regarding WSECU's discretionary overdraft privilege policy and WSECU's overdraft services disclosure. *See* SAC, Ex. 1.

The latter disclosures begin with notice that "[a]n overdraft occurs when you do not have enough money in your account to cover a transaction. At WSECU's discretion, the overdraft may be paid." *Id.* at 2. The form provides that WSECU's Overdraft Privilege is a "service that is included as a benefit on your checking account . . . ." *Id.* The service covers overdrafts for "[c]hecks and other transactions made against your checking account" and "[r]ecurring automatic bill payments authorized against your debit card." *Id.* Account holders, however, must opt-in for the service to cover "ATM

transactions" and "[e]veryday debit card transactions." *Id.* (thus, the "Opt-in Agreement"). It is undisputed that Wodja opted into ATM and debit card overdraft charges.

WSECU's Opt-in Agreement was prompted by federal regulation. Historically, financial institutions would charge an overdraft fee for any transaction that resulted in an overdraft of one's account. Electronic Fund Transfers, 74 Fed. Reg. 59033 (Nov. 17, 2009). After determining that overdraft fees disproportionately affected some consumers, the Federal Reserve Board of Governors proposed an amendment to Regulation E that required consumers to opt into overdraft protection for ATM and debit card transactions. *Id.* at 59034–35. The applicable regulation requires financial institutions to provide a notice "substantially similar to Model Form A–9 . . . include all applicable items in this paragraph, and may not contain any information not specified in or otherwise permitted by this paragraph." 12 C.F.R. § 1005.17(d). The instant dispute does not involve whether WSECU violated this regulation by failing to include substantially similar language. Instead, the parties dispute the impact of the agreement on the parties' contractual relationship.

According to the complaint, Wodja alleges that he was improperly charged overdraft fees. Specifically, Wodja alleges as follows:

> Plaintiff was harmed by the practice of charging overdraft fees when there was money in the account to cover the transaction. Plaintiff entered into agreement with WSECU, where WSECU would only charge overdraft fees on ATM and Debit Card transactions if there was not sufficient funds or money to pay the transaction. WSECU breached this agreement by charging Plaintiff overdraft fees on transactions when there was sufficient funds/money to pay the transaction, and in so breaching the Opt-In

> Agreement, violated Regulation E. It will be necessary to obtain Defendant's records to determine each occasion when WSECU engaged in this practice, and the resulting damage to Plaintiff from the practice. However, to give just one example on June 18, 2015, Plaintiff had a beginning balance of $395. Plaintiff then withdrew $300 from an ATM, leaving a balance of $95. Plaintiff was then charged a $27 overdraft fee (called an Overdraft Privilege Fee) on the ATM transaction. Plaintiff was charged the overdraft fee despite having sufficient funds/money ($95) in his account to cover the transaction. It is believed a complete review of Plaintiff's records will show multiple instances of Plaintiff being improperly charged overdraft fees for transactions despite having sufficient money in his account to cover the transaction.

SAC ¶ 18.

## III. DISCUSSION

**A.  Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. When deciding a motion to dismiss, the Court's consideration is limited to the pleadings. Fed. R. Civ. P. 12(d).

**B.     Breach of Contract**

To state a breach of contract claim, Wodja must allege (1) the existence of a contract, (2) a material breach of that contract, and (3) resulting damage. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712 (1995).

First, WSECU argues that the Opt-in Agreement is not a contract. WSECU, however, fails to provide any persuasive argument on this issue. For example, WSECU contends that the Opt-in Agreement "does not give rights and obligations independent of the [MAA] . . . ." Dkt. 32 at 15. Contrary to WSECU's position, at the very least, the Opt-in Agreement gives WSECU the right to charge an overdraft fee on an ATM or debit card transaction if the customer opts into overdraft protection. Consider the hypothetical scenario of a customer objecting to an overdraft fee on an ATM transaction. It would seem that the first document WSECU produced to justify the fee would be the signed Opt-in Agreement of that particular customer because it would have given WSECU the right to charge the fee for that particular transaction. Thus, WSECU's argument that the Opt-in Agreement is merely a notice is without merit.

Second, and one of the major disputes, is whether the Opt-in Agreement can alter the terms of the MAA. Or, in other words, does the Opt-in Agreement govern when WSECU may charge the fee for a particular transaction? Regulation E requires a "brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed, including ATM and one-time debit card transactions." 12 C.F.R. § 1005.17(d)(1). WSECU's Opt-in Agreement provides that "[a]n overdraft occurs when you do not have enough money in your account

1 to cover a transaction." Wodja contends that this language "clearly manifests the parties'

2 intent that overdrafts will not be assessed unless the customer's full account does not

3 contain enough money to pay for the transaction." Dkt. 34 at 16. This argument is

4 unpersuasive because the language is a brief description of other provisions laid out in the

5 MAA. In fact, the Opt-in Agreement provides that the MAA "governs your accounts and

6 member relationship with the credit union. To the extent there is inconsistency between

7 this policy and the terms of the [MAA], the [MAA] will control." Thus, to the extent that

8 the Opt-in Agreement is a contract, it at most only controls the opt-in aspect of the

9 parties' relationship and WSECU informed Wodja that any other inconsistency is

10 controlled by the MAA.

11      Wodja, however, argues that, if there is an inconsistency, the Opt-in Agreement

12 controls. Although this is contrary to the plain language of the Opt-in Agreement, Wodja

13 argues that, before WSECU charges the fee, Regulation E requires WSECU to provide

14 "the consumer with a notice in writing, or if the consumer agrees, electronically,

15 segregated from all other information, describing the institution's overdraft service." 12

16 C.F.R. § 1005.17(b)(1)(i). At most, Wodja's argument shows that WSECU has violated

17 this provision of Regulation E and, even if true, Wodja fails to provide any authority for

18 the proposition that a court should rewrite the parties' contract to comply with a federal

19 regulation. In other words, the relevant contract says what it says, and if it violates

20 Regulation E, then that is the extent of the matter. It is not a plausible cause of action to

21 assert that a court should retroactively rewrite the parties' agreement to comply with

22

Wodja's interpretation of a federal regulation. Therefore, the Court rejects Wodja's argument and concludes that the language of the MAA controls the parties' relationship.

Third, Wodja argues that the MAA's overdraft provision contains an ambiguity. Dkt. 34 at 23. The provision provides as follows:

> *Overdraft Liability*. If on any day, the available funds in your checking account are not sufficient to cover checks and other items posted to your account, those checks and items will be handled in accordance with our overdraft procedures or an overdraft protection plan you have with us.

MAA ¶ 14(a). Wodja argues that

> [the MAA] does not define "available funds" or "available balance," or indicate that holds may be placed on funds which have already been determined to be "available." Neither does the MAA state that overdraft transactions and fees are determined using an artificial balance that takes into account pending debit transactions. As such, the most reasonable interpretation of "available funds" as used in the MAA is the total amount of funds in any given account, *i.e.* the ledger balance.

Dkt. 34 at 23 (internal citations omitted). WSECU counters, in conclusory fashion, that the "MAA plainly authorizes WSECU to use a member's available balance, rather than the actual (ledger) balance, when making overdraft determinations." Dkt. 35 at 5. WSECU also contends that "available funds" is a term that "has an established, well-known meaning in the financial services industry." *Id.* n.2 (citing a white paper of "initial data findings" published by the Consumer Financial Protection Bureau). The Court is not convinced that the language is as clear as WSECU asserts or that Wodja should be charged with knowledge buried in a bureau's white paper. If the Court finds an ambiguity, Wodja requests an opportunity to conduct discovery on material related to this term. Dkt. 34 at 24. The Court is inclined to deny the motion to dismiss on this issue

ORDER - 7

because questions of contract interpretation and ambiguities are mixed questions of fact and law. *See Martinez v. Miller Indus., Inc.*, 94 Wn. App. 935, 942 (1999). In any event, the Court concludes that there is solid ground to deny the motion to dismiss as explained below. The limited discussion provided on the "available funds" issue hopefully provides guidance to the parties for purposes of proceeding with this matter and/or further dispositive motions.

Finally, with regard to the breach of contract claim, Wodja has alleged sufficient facts under a cognizable legal theory. Wodja alleges that

> on June 18, 2015, Plaintiff had a beginning balance of $395. Plaintiff then withdrew $300 from an ATM, leaving a balance of $95. Plaintiff was then charged a $27 overdraft fee (called an Overdraft Privilege Fee) on the ATM transaction. Plaintiff was charged the overdraft fee despite having sufficient funds/money ($95) in his account to cover the transaction.

SAC ¶ 18. Although the Court has concerns regarding jurisdiction over a $27 damages claim, it cannot be contested that this is a classic breach of contract allegation. Therefore, the Court denies WSECU's motion to dismiss Wodja's breach of contract claim. Accordingly, the Court also denies WSECU's motion as to Wodja's breach of the duty of good faith and fair dealing claim because it is directly tied to the breach of contract claim.

**C.   Unjust Enrichment; Money Had and Received**

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Mastaba, Inc. v. Lamb Weston Sales, Inc.*, 23 F. Supp. 3d 1283, 1295 (E.D. Wash. 2014) (citing *Young v. Young*, 164 Wn.2d 477, 484 (2008)). Similarly, money had and received "arises independently of the express agreement or intent of the parties, where the facts are

1 such that the holder of another's funds would be 'unjustly enriched' if the law did not
2 presume a promise to pay." *Coast Trading Co. v. Parmac, Inc.*, 21 Wn. App. 896, 902
3 (1978).

4     In this case, WSECU argues that the Court should dismiss Wodja's implied
5 contract claims because the parties had an express contract. Wodja counters that he is
6 allowed to plead in the alternative. However, quasi-contract or implied contract claims
7 are not alternatives to a breach of contract claim. *See Mosier v. Stonefield Josephson*,
8 *Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016) ("[A]s a matter of law, a quasi-contract action
9 for unjust enrichment does not lie where, as here, express binding agreements exist and
10 define the parties' rights."). In other words, these claims may be alternatives to failed
11 contract existence claims, such as fraud in the inducement or illegality of contract, but not
12 alternatives to a failed breach of contract claim. Wodja's breach of contract claim is
13 based on interpretation of the contract, not impossibility or failure of the relevant
14 contract. Thus, he may not plead in the alternative, and the Court grants WSECU's
15 motion to dismiss these claims.

## IV. ORDER

Therefore, it is hereby **ORDERED** that WSECU's motion to dismiss (Dkt. 32) is **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 9th day of June, 2016.

BENJAMIN H. SETTLE
United States District Judge